In re Robert M. BERMAN,
et al., Appellants,

v.

Michael C. FORTI, et ux., Appellees,

No. Civ.A. MJG–98–2959.

United States District Court,
D. Maryland.

Feb. 3, 1999.

Edward L. Blanton, Jr., Baltimore, MD, for appellants.

Alan M. Grochal, Mary Fran Ebersole, Tydings & Rosenberg, LLP, Baltimore, Maryland, for appellees.

GARBIS, District Judge.

The Court has before it Appellants' appeal from the United States Bankruptcy Court for the District of Maryland's Order Avoiding Liens entered July 29, 1998 and materials submitted by the parties relating thereto. The Court finds that a hearing is unnecessary.

## I. *BACKGROUND*

In late 1993 and early 1994, Robert Berman and C. Nelson Berman made a series of loans to Forti Builders, Inc. These loans were guaranteed by the Debtors, Michael and Geraldine Forti, Vice President and President of Forti Builders. The loans to Forti Builders were evidenced by unsecured promissory notes. When the notes became due, Forti Builders was unable to pay and eventually filed for bankruptcy protection.

In late October of 1995, the Bermans filed suit against the Fortis in the Circuit Court of Baltimore County (the "state action"). The Bermans sought judgment against the Fortis for the loans to Forti Builders which the Fortis had guaranteed and also for a personal loan that C. Nelson Berman had made to Michael Forti. The

total of the Fortis' alleged indebtedness to the Bermans was $370,000.

The Bermans moved for summary judgment in the state action. In late April of 1996, when the summary judgment motion was to be heard in oral argument, the Fortis had a piece of property for sale and, indeed, under contract. Under Maryland law, an entry of judgment for the Bermans would have resulted, automatically, in a lien on the Fortis' property in Baltimore County, encumbering it and interfering with the sale. A day or two before the hearing on the summary judgment motion, counsel for the parties and the trustee for the Forti Builders estate engaged in negotiations. As a result of these negotiations, on May 1, 1996, the Circuit Court for Baltimore County entered Orders granting judgment to each of the Bermans.[1] The first line of each of the Orders states, "The Defendants, [Fortis] having consented thereto, ..." Each Order then states the amount of the judgment for each plaintiff, that the plaintiff will not execute the judgment for thirty days, that before execution ten days notice will be given, and that the proceeds from the sale of the Fortis' property will be held in escrow. Each of the terms in the Orders had been agreed to in the prior negotiations.[2]

Pursuant to the parties' agreement and the Orders, the Bermans withheld execution of judgment, the property was sold, and the proceeds placed in escrow. The Bermans then provided notice of intent to execute the judgment liens. Very shortly after the notice was issued the Fortis, on July 17, 1996, filed for bankruptcy protection.

In the course of the bankruptcy proceeding, the Fortis brought an action seeking to avoid the judicial liens on their home

as preferential transfers. In order to have standing to bring this action, the Fortis had to establish, *inter alia*, that the transfers resulting from the consent judgments were not voluntary. In ruling on this issue the Bankruptcy Court determined that the Fortis voluntarily had consented to the judgments, but concluded that the judicial liens arose by operation of law, not by agreement. The Bankruptcy Court thus decided that while the entry of judgment may have been voluntary, the transfers, the judicial liens, were not. The Bankruptcy Court further held that ultimately the Fortis were entitled to avoid the liens at issue.

The Bermans appeal from the Bankruptcy Court's determination that the transfers at issue were not voluntary.

## II. *LEGAL STANDARD*

■ When a District Court reviews a Bankruptcy Court final order, the District Court acts as an appellate court. Accordingly, legal conclusions are reviewed *de novo*, whereas findings of fact may be set aside only if "clearly erroneous." *See In re Bulldog Trucking, Inc.*, 147 F.3d 347, 351 (4th Cir.1998); *Rinn v. First Union Nat'l Bank of Md.*, 176 B.R. 401, 407 (D.Md.1995); Fed.R.Bankr.P. 8013.

## III. *DISCUSSION*

■ In this case, the Fortis sought to employ § 522(h) of the Federal Bankruptcy Code to avoid judicial liens imposed upon them by virtue of the entry of judgments against them in the state action. In order to have standing to bring such an action the Fortis must prove that they could have exempted the property transferred,[3] that the trustee could have avoid-

---

1. Judgment was ordered in favor of C. Nelson Berman in the amount of $145,000, and in favor of Robert Nelson in the amount of $225,000.

2. The Fortis argue that they did not "consent" to judgment but rather only decided not to further litigate the matter.

3. Section 522 allows certain property to be exempt from the bankruptcy estate. This essentially ensures that a debtor is not left, after the bankruptcy proceedings, completely destitute with absolutely no assets. The exemptions further the general goals of the Bankruptcy Code—giving a debtor a fresh start and distributing assets in a fair manner to credi-

ed the transfer under one of several specific of Bankruptcy Code sections,[4] that the trustee did not attempt to avoid the transfer, that the transfer at issue was not voluntary, and that the debtor did not conceal the property. *In re Humphrey,* 165 B.R. 578, 580 (Bankr.D.Md.1993).[5] At the hearing on this matter, Bankruptcy Judge Derby determined that the Fortis had met each of these elements and that the judicial liens could be avoided. The only issue presented on appeal is whether the transfers at issue were involuntary.

The Bermans contend that the transfers, the judicial liens, must be considered in light of the negotiations which occurred immediately prior to the entry of judgments. The Bermans' basic contention is that the Fortis voluntarily settled the state action against them, that the judicial liens flowing from the consent judgments were overtly acknowledged consequences of the judgment, that the Fortis need not have consented to judgment, and that therefore the transfer should be considered voluntary. The Bermans assert that, as a matter of law, a consent judgment must be considered voluntary and that any other result would exalt form over substance. The Fortis assert that any judicial lien, including a lien resulting from a consent judgment, is involuntary and, as a matter of law, results in an involuntary transfer.

▇ The Bankruptcy Code does not define the word "voluntary." The legislative history of the relevant Code subsection, however, explains that the subsection at issue:

> gives the debtor the ability to exempt property that the trustee recovers ... if the property was involuntarily transferred away from the debtor (such as by

the fixing of a judicial lien) and if the debtor did not conceal the property.

H.R.Rep. No. 95–595 at 362 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6318 (addressing § 522(g)). Thus, bankruptcy courts have concluded that an involuntary transfer "occurs when the property is transferred by operation of law, such as by means of an execution of judgment, repossession, or garnishment." *See In re Davis,* 169 B.R. 285, 295–96 (E.D.N.Y. 1994) (citing *In re Washkowiak,* 62 B.R. 884, 886 (Bankr.N.D.Ill.1986) and *In re Huebner,* 18 B.R. 193, 195 (Bankr. W.D.Wis.1982)). A transfer is also involuntary if it resulted from "fraud, material misrepresentation or coercion." *Id.* A transfer is voluntary if "a debtor, with knowledge of all essential facts and free from the persuasive influence of another, chooses of her own free will to transfer property to the creditor." *Id.* (quoting *In re Reaves,* 8 B.R. 177, 181 (Bankr.D.S.D. 1981), other citations omitted).

▇ In this case, the Bankruptcy Court found as factual matter that the "debtor[s] consented to the judgment[s] being entered." Tr. 109–110. The Bankruptcy Court, however, stated that "by operation of law, once a judgment is entered, a lien attaches to any real estate owned by the judgment defendants in the jurisdiction where the judgment is entered. That is an involuntary act against the debtor by operation of law." Tr. at 110. The applicable Maryland statute states:

> If indexed and recorded as prescribed by the Maryland Rules, a money judgment of a court constitutes a lien to the amount and from the date of the judgment on the judgment debtor's interest in land located in the county in which the judgment was rendered ...

---

tors. *See In re Andrews,* 80 F.3d 906, 909 (4th Cir.1996) (stating the two overarching purposes of the Bankruptcy Code are to protect creditors and to allow debtor to make a fresh start).

4. In this case, the Fortis asserted that the judicial liens could have been avoided under

§ 547 which concerns transfers made for the benefit of a creditor within the 90 days preceding the bankruptcy filing.

5. In essence, to have standing to bring a suit under § 547 a debtor must satisfy §§ 522(g) and 522(h).

Md.Code Ann.Cts. & Jud.Pro. § 11–402 (1998).

The question here presented appears to be one of first impression. Under § 522(f), bankruptcy courts have addressed whether a consent judgment or a confession of judgment results in a "judicial lien" or a "security interest." The nearly unanimous conclusion is that a judicial lien results and that such liens may be avoided under § 522(f). *In re Ashe,* 669 F.2d 105, 108–110 (3d Cir.), *rev'd on other grounds, Commonwealth Nat'l Bank v. Ashe,* 459 U.S. 1082, 103 S.Ct. 563, 74 L.Ed.2d 927 (1982), reasoning reaffirmed in *In re Ashe,* 712 F.2d 864 (3d Cir.1983); *In re Applebaum,* 162 B.R. 548 (Bankr.E.D.Cal.1993) (finding consent judgment is a judicial lien rather than a consensual lien); *In re Inman,* 131 B.R. 789 (Bankr.N.D.Tex.1991) (allowing avoidance of judicial lien arising from consent judgment but not allowing avoidance of assignment executed by debtor as part of the settlement). Courts have also determined that transfers, such as mortgages, made in the course of settlement are "voluntary" under § 522(g). *In re Dowdy,* 105 B.R. 743 (Bankr.M.D.Ga.1989) (finding transfer of $750 in settlement of law suit to be voluntary); *In re Terry,* 56 B.R. 538 (Bankr.D.Vt.1986) (promissory note and mortgage deed executed as part of settlement were voluntary transfers). It appears, however, that no published opinion has addressed the issue of whether a judicial lien arising from a consent judgment, unsupported by any other transfer, is "voluntary."

The Bermans rely upon *Terry* for the proposition that a transfer made in settlement of litigation is voluntary. In *Terry* a creditor filed suit against the debtor for legal services rendered. As a part of the settlement the debtor "executed a promissory note and a Vermont mortgage deed to the" creditor. *Id.* at 539. The *Terry* decision does not explain whether the debtor also consented to judgment or whether the original complaint was simply dismissed. In any event, the issue in *Terry* was whether the transfer resulting from the promissory note and mortgage was voluntary. The *Terry* court did not address the existence of a judicial lien or whether such a lien would be "voluntary" in the context of a settlement. Indeed, it is for precisely this reason that the Bankruptcy Court addressing the Fortis' avoidance action found that *Terry* did not support the Bermans' position.

This Court, like the Bankruptcy Court, finds *Terry* inapplicable. The issue under §§ 522(g) and (h) is whether the specific *transfer* is voluntary, not whether the debtor generally acted in a voluntary manner to end litigation. In the case of *In re Ashe,* 669 F.2d at 109, the Third Circuit has noted that a consent judgment, like a confession of judgment clause, is a consensual undertaking. The Third Circuit held, however, that with either a confession of judgment or a consent judgment, "the lien is created not by the agreement, but by the judgment." *Id.; see also In re Holyst,* 19 B.R. 14 (Bankr.D.Conn.1982) (finding lien was created by the "state court judgment, not by the consent of the debtor to the judgment").

The Fortis consented to the entry of judgment against them. It was not this agreement or consent, however, that on its own effected a transfer of property. Rather, the property interest was transferred only later, when the judgment had been entered, indexed, and recorded and the lien arose. The Fortis did not consent to these subsequent happenings and the transfer was not voluntary.

In the underlying case, the parties were free to enter into a settlement and to execute documents as part of that settlement as happened in *Terry.* For example, in *In re Inman,* 131 B.R. 789 (Bankr. N.D.Tex.1991) (addressing § 522(f)), the debtor and creditor engaged in litigation prior to the bankruptcy filing. In *Inman* a settlement was reached pursuant to which the debtor executed an assignment of interest to the creditor. Additionally, a consent judgment was entered. In review-

ing the litigation, the Bankruptcy Court determined that the settlement had two prongs: an assignment and a judgment lien. *Id.* at 793. The court permitted the debtor to avoid the second prong (judgment lien) but not the first prong (assignment), even though the consent judgment and assignment both resulted from the settlement the parties had agreed upon.

Rather than secure a separate assignment or security from the Fortis, the Bermans relied upon the consent judgment and the lien that arose by operation of law therefrom. A judicial lien is the one example of an involuntary transfer described in the legislative history to this section of Bankruptcy Code. The Bermans' contend that to find the transfer involuntary exalts form over substance. However, precedent existing prior to the April 1996 settlement demonstrated that in bankruptcy proceedings a document executed in settlement of litigation would be treated differently from a judicial lien arising by virtue of a consent decree. From the record, it appears that the Bermans were aware of the possibility of a personal bankruptcy action by the Fortis. As a condition of settlement the Bermans could have demanded that the Fortis voluntarily execute a document granting a security interest to the Bermans. The Bermans did not obtain a voluntary transfer from the Fortis. Rather, they accepted such interest in the Fortis' property as arose by operation of law by virtue of the judgment.

Accordingly, the Court concludes that the Bankruptcy Court correctly held that the transfers resulting from the judicial liens were not "voluntary" for purposes of 11 U.S.C. § 522(g). Consequently, the Fortis are able to avoid the liens at issue.

## IV. *CONCLUSION*

For the foregoing reasons:

1. The July 29, 1998 Order of the Bankruptcy Court shall be, and hereby is, AFFIRMED.

2. This case shall be REMANDED to the Bankruptcy Court for further proceedings consistent herewith.