**In the Matter of Irlan Douglas BRANNAN, Debtor.**

**Bankruptcy No. 83–00308G.**

United States Bankruptcy Court, N.D. Georgia.

March 23, 1984.

Dennis M. Hall, Culbreth & Hall, Atlanta, Ga., for debtor.

David W. Porter and Nicholas Sears, Morris & Manning, Atlanta, Ga., for foreclosing party.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

Although inappropriately styled as a motion for a Temporary Restraining Order, this matter was heard on February 2, 1984. The debtor had filed a voluntary Chapter 7 petition on December 6, 1983. On February 1, 1984, almost two months thereafter and two days before foreclosure proceedings were scheduled on Alabama real property which had belonged to the debtor from 1980 to October 10, 1982, that real property was conveyed by deed to the debtor. The debtor sought the protection of the automatic stay for the Alabama real estate against the foreclosing creditor. The hearing and post-hearing briefs have addressed the issue of whether property conveyed to the Chapter 7 debtor after his bankruptcy petition had been filed was property of the estate within the terms of 11 U.S.C. § 541(a)(7). The consequences of so holding would be to provide the property with the protection of the automatic stay. After reviewing the testimony and documents submitted at the hearing along with the applicable statutory sections of the Code and decisional law, this court concludes that the property in question was conveyed *to the debtor* and *not to the Chapter 7 estate.* Therefore, the statutory language of § 541(a)(7), which provides: "any interest in property that *the estate acquires after the commencement of the case* " is not triggered, and the relief generally afforded by the automatic stay to property of the estate in a Chapter 7 case is not available.

## FINDINGS OF FACT

1. Sometime in 1980, creditor Jimmy O'Connor ("O'Connor") conveyed certain real property located in Alabama to the debtor, Irlan Douglas Brannan ("Brannan");

2. The real property was divided into three different parcels;

3. On approximately October 10, 1982, the debtor conveyed his entire interest in certain of the property in question to the debtor's brother-in-law, Charles Dickens ("Dickens");

4. In the warranty deed of October 10, 1982, Dickens assumed and agreed to pay and carry out all obligations owing on the property;

5. On December 6, 1983, the debtor filed a Chapter 7 petition;

6. The debtor did not list the property in question as an asset in the Chapter 7 schedule originally filed;

7. O'Connor was listed in the debtor's Chapter 7 schedules as an unsecured creditor for an unknown amount;

8. In December of 1983, O'Connor advertised a foreclosure sale to be held on February 3, 1984, on the property which the debtor had conveyed in the October 10, 1982 deed;

9. On February 1, 1984, Dickens conveyed to the debtor the identical property which he had received under the October 10, 1982 warranty deed;

10. Under the February 1, 1984 warranty deed, the debtor assumed and agreed to pay and carry out all obligations owing on the property;

11. The foreclosure sale was conditionally permitted to occur on February 3, 1984, subject to a later determination by this court of the within issue.

## DISCUSSION

The debtor argues that the property conveyed to him on February 1, 1984, is property of the estate, acquired after the commencement of the case. As such, it comes within the definition of 11 U.S.C. § 541(a)(7) and, consequently, is protected under the automatic stay provisions. The statutory language of new subsection 7 assures automatic stay protection to interests in property not acquired until after the bankruptcy petition is filed. *See* statement of Representative DeConcini, 125 Cong. Rec. 17406 (Daily Ed. October 6, 1978). The one express stipulation which subsection (a)(7) imposes in exchange for the broad stay protection is that the interest in after acquired property must be acquired by "the estate."[1] The conclusion this court reaches is that the property conveyed on February 1, 1984 to the Chapter 7 debtor was conveyed to him personally and not to the Title 11 Chapter 7 estate. This conclusion is based on an analysis of the statutory language, principles of statutory construction and decisional law.

### Statutory Language/Principles of Statutory Construction

The language of § 541(a)(7), when applied to any individual's Chapter 7 case, implies the existence of two separate estates. The Title 11 estate created at the time of the Title 11 filing and the debtor's own personal estate which has its inception also at that time.[2] This distinction, implicit

---

1. The type of interest contemplated by the new subsection was explained by Representative DeConcini: "For example, if the estate enters into a contract after the commencement of the case, such a contract would be property of the estate." 124 Cong.Rec. 17406 (Daily Ed. October 6, 1978). NORTON BANKRUPTCY LAW AND PRACTICE, Volume 4, pp. 425–426.

2. The implication of § 541(a)(7) with regard to a case under either Chapter 7, Chapter 11 or Chapter 13 is not identical. Part of the symmetry is a product of the different purposes each of the chapters serves. When an individual debtor files a Chapter 7 case, all non-exempt property of the Chapter 7 estate is to be liquidated for the benefit of creditors. Because Congress has established a fresh-start policy for the debtor, a new post-petition estate belonging to the individual debtor is created simultaneously with the filing. Into this individual post-petition estate, the debtor may transfer any property he can exempt out of the Chapter 7 estate as well as post-petition earnings from services he has performed. Other property which *the debtor* receives, after filing and which is not governed by the exceptions in § 541(a)(5), would also be part of the debtor's fresh start estate.

In contrast to the establishment of two separate estates at the time of an individual debtor filing a Chapter 7 case, only one estate is established at the filing of a typical Chapter 11 case. The purpose of the Chapter 11 case is business reorganization. To this end, the debtor-in-possession submits a reorganization plan in order to rehabilitate and continue the operation of the business. All of the assets of the debtor, pre-petition and post-petition, are applied to the reorganization effort and must be dealt with in the plan for the benefit of creditors. Because the debtor is the business and success is measured by survival not liquidation, no individual or personal estate separate from the Title 11 Chapter 11 case is created at the time of filing. A Chapter 13 case is similar in purpose to a Chapter 11 case, i.e., rehabilitation, except that an individual debtor receives time to readjust the flow of incoming/outgoing money in order to pay the outstanding debt and achieve rehabilitation. To this end, at the time of filing, only one estate, the Title 11 Chapter 13 estate is created. The "property of the estate" in a Chapter 13 case is by positive, statutory definition far more extensive than the "property of the estate" in a Chapter 7 case. Property of the estate in a

in subsection (a)(7), is not unique within the Code.[3] Other subsections of § 541(a) delineate the boundaries of the two estates. Subsections (a)(1), (2), (3) and (4), all refer to the Title 11 estate. The first two, (a)(1) and (2), use the date of the bankruptcy filing for creating the Title 11 estate from interest in property held by the debtor as of the date of filing. Subsections (a)(3) and (4) bring into the estate property not held by the debtor at the time of filing but subsequently recovered for the estate. Subsections (a)(5) and (6) both expressly refer to the Title 11 estate and the debtor's personal estate. Subsection (a)(5) permits the Title 11, Chapter 7 estate to remove from the debtor's post-petition personal estate three specific categories of interests, if acquired by the debtor within 180 days of the bankruptcy filing.[4]

To understand why Brannan's argument fails, it is particularly useful to compare (a)(5) and (a)(6) with (a)(7). If, in fact, any of the three categories listed in (a)(5) were applicable to the interest in question, the debtor would have the result he argues for as the conveyance was made within 180 days of filing. However, the conveyance in the instant circumstances does not come within any of the three defined categories. Moreover, because the three categories appear as exclusive exceptions, the maxim "expressio unius est exclusio alterius" has application.[5] While expressio unius est exclusio alterius is a principle of statutory construction only and not a rule of law, in the instant circumstances it supports the proposition that the debtor's attempt to have the real estate in question become property of the Chapter 7 estate fails because the debtor's acquisition by conveyance does not come within the enumerated exceptions. Additionally, the instant events more nearly parallel the conceptual

---

Chapter 13 case includes all of the property available to the Chapter 7 estate *plus* property, which includes income, *the debtor acquires* after filing:

§ 1306  Property of the estate
(a) Property of the estate includes, in addition to the property specified in § 541 of this title—
(1) All property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of this title, whichever occurs first;
(2) Earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of this title whichever occurs first.

The reason all pre-petition and all post-petition property is brought into a single estate in a Chapter 13 case is twofold. First, although the estate is administered by a trustee, distribution by the trustee is made only in accordance with a Chapter 13 plan proposed by the debtor which must be confirmed by the court before becoming effective. Secondly, "except as provided for in a confirmed plan or order confirming plan, *the debtor shall remain in possession of all property of the estate*" and "the confirmation of a plan *vests all of the property of the estate in the debtor*." §§ 1306(b), 1327(b). There is no separation of "property of the estate" from property of the individual debtor at the time of filing, although with regard to certain property, generally income, e.g., the trustee, under the order of

confirmation of the plan, and not the debtor, has control over such property.

Section 1306(a)(1) is especially significant in terms of Brannan's argument that the property conveyed to him after commencement of the case flows to the Chapter 7 estate. The language quoted above in § 1306(a)(1) would produce precisely the result for which Brannan argues if the property came to debtor prior to confirmation. That result is not reached in a Chapter 7 case, however, where at commencement of the case, the debtor's personal estate is separated from the Title 11, Chapter 7 estate.

**3.** See 11 U.S.C. § 362(a). Subsection (a)(1), (5), and (6) refer to prohibited actions against the debtor's property. Subsection (a)(3) and (4) refer to prohibited actions against "property of the estate"; subsection (a)(2) refers to prohibited actions against both the debtor and property of the estate.

**4.** 11 U.S.C. § 541(a) ...
(5) An interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
(A) by bequest, devise, or inheritance;
(B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree;  or
(C) as a beneficiary of a life insurance policy or of a death benefit plan.

**5.** Amjur 2d. § 211–212 (1974).

framework of (a)(5), e.g., it is the debtor Brannan who acquired the property, not the *estate* as (a)(7) requires. The debtor is prevented from forcing a non-applicable section of the Code to carry the debtor's post-petition property interest to the Chapter 7 estate and thus assure automatic stay protection when he is precluded from such a result by the exclusion under the relevant statutory section.

Subsection (a)(6) adds substance to both the Title 11 estate and the debtor's own personal estate. The latter shelters any earnings from services which the debtor has performed post-petition while the former receives "all derivatives of property of the estate," such as "proceeds, products, offspring, rents and profits." The property conveyed to Brannan does not come within either the personal estate or the Title 11 estate under the (a)(6) definition. Subsection (a)(6) is inapplicable in resolving the issue before this court, although it is indirectly useful because it helps establish the existence of both the Title 11 estate and the debtor's own personal estate. Thus, it emphasizes that (a)(7)'s reference is solely to the Title 11 estate.

## Decisional Law

The debtor cites as support for his position the Eleventh Circuit decision *In re Wilson*, 694 F.2d 236 (CA11, 1982). The Eleventh Circuit, reversing both the Bankruptcy Court and the District Court, held that an attorney's fee paid by the debtor pre-petition was excessive, would be partially disallowed, and the disallowed portion would flow to the estate and be available for exemption by the debtor. The Eleventh Circuit concluded that the Title 11 estate received the property based on its analysis of § 541(a)(7). Agreeing with the District Court's statement "that § 541(a)(7) does not render every 'interest in property that the estate acquires after the commencement of the case' available for the debtor's exemption claims," the Eleventh Circuit disagreed with the District Court's analysis of the operation of § 541(a)(7). The Circuit Court found that § 541(a)(7) does bring into

the estate every such interest not covered by a specific statutory provision mandating some other treatment. *Id.* at 238.

The debtor urges this court to adopt both the *Wilson* rationale and result. The debtor contends that here, as in *Wilson*, there is no specific statutory provision mandating some other treatment for the debtor's post-petition property and, therefore, the property should flow into the Chapter 7 estate. The debtor misconstrues the *Wilson* holding by giving it an unreasonably broad reading. *Wilson* is limited to its facts. It stands for the proposition that pre-petition property which would have passed to the Title 11 Chapter 7 estate at the time the debtor filed his bankruptcy petition but for a transfer which occurred prior to the debtor's bankruptcy filing is to be returned *to the estate* if the transfer is later voided. The key to the Eleventh Circuit's interpretation of § 541(a)(7) is that the property in question in *Wilson* would have become part of the Title 11 estate created at the time of filing if the debtor had not made the pre-petition transfer. Upon disallowance of the pre-petition transfer, the property reverted to pre-petition property of the debtor and thus property of the Title 11 estate.

In contrast, the instant facts reveal that the debtor had had no pre-petition interest in the Alabama real estate for fourteen months preceding the Chapter 7 filing. The October 10, 1982 deed from the debtor discloses no reservation of interest in the property, but rather discloses that the debtor conveyed his entire estate. Nor is there any allegation that the October 10, 1982 transfer from the debtor to Dickens is subject to being disallowed. If § 541(a)(7) is read as the debtor urges to bring into the Title 11 Chapter 7 estate property which comes to the debtor post-petition and in which he had no pre-petition interest, bankruptcy law would seriously jeopardize debtor/creditor relations. Any individual choosing not to conform to the legal requirements of bankruptcy law might yet be free to shield a property interest under the automatic stay by conveying the property interest to an individual who had previously

filed a Chapter 7 petition.[6] Such a transaction would be an abuse of the bankruptcy process. Rehabilitation and a fresh start are equitable principles and are reserved only for those willing to submit themselves to prescribed procedures.

The failure of the debtor to be persuasive on the applicability of the *Wilson* decision to the instant circumstances results from another fundamental factual distinction. In *Wilson*, the property which the Eleventh Circuit ordered returned to the Chapter 7 estate came to the estate without obligation on the estate's part. Assuming Brannan's theory, that the property conveyed to the debtor after his bankruptcy filing flows to the estate under § 541(a)(7), the estate, without authorization by the court, would have become obligated for a substantial post-petition debt. The documents in evidence disclose that the October 10, 1982 deed not only conveyed the debtor's entire interest in the real estate, but removed all his obligation to make payments. When the property was conveyed from Dickens to the debtor, almost two months after the debtor's Chapter 7 filing, the debtor assumed the obligation for making payments. In order to hypothesize the assumption of that obligation by the Chapter 7 estate, court authorization, after notice and a hearing, would have been required.[7] No such authorization was requested or given.

■ When the consequences of a post-petition transfer to a Chapter 7 debtor are studied, it becomes evident that a post-petition transfer to the debtor cannot automatically flow into the Title 11 estate. Once a Chapter 7 debtor files for relief, he is entitled to a post-petition estate of his own, separate from the Chapter 7 estate being administered by the trustee. Into this fresh start, personal estate flows property he may exempt from the Chapter 7 estate, earnings from services performed post-petition and all other property received post-petition that does not come within the exception of § 541(a)(5).[8]

One final rationale for the debtor's attempted reliance on § 541(a)(7) remains to be addressed. The debtor made allusion to the applicability of trust law, e.g., because the debtor "participated in making payments on the property ... the property may be considered to have been held in trust for the debtor." No authority, statutory or decisional, is cited. The debtor has not established the existence of a trust. Nor does it appear that any trust would govern the instant situation so as to shield this debtor from this creditor.

■ For the reasons set forth above, this court finds that the property conveyed to the Chapter 7 debtor following his bankruptcy petition filing does not come within the meaning of § 541(a)(7). The automatic stay, therefore, affords no protection to the property conveyed. The foreclosure sale, which occurred on February 3, 1984, is fully authorized with regard to any property interest in which the debtor lacked a pre-petition interest.

---

6. Even if a post-petition transfer were to be direct "to the trustee" or "to the Chapter 7 estate," the trustee would have the authority to decline if the terms were not acceptable. 11 U.S.C. § 554.

7. 11 U.S.C. §§ 363, 364.

8. Unlike a Chapter 13 debtor, a Chapter 7 debtor is not required to request trustee approval to incur new debt within his personal estate. 11 U.S.C. § 1305. Marketplace economics and the prohibition against a Chapter 7 debtor filing a new bankruptcy petition earlier than six years from the discharge date may be the sole restraint. See fn. 2, *supra.*