**In re Davis WADE and Jeannette Taye Monroe–Wade, Debtors,**

v.

**Eileen Shaffer BAILEY, Trustee.**

**Chase Manhattan Mortgage Corporation and Chase Manhattan Bank, USA, NA, Defendants–Appellants.**

v.

**David Wade and Jeannette Wade, Plaintiffs–Appellees.**

Bankruptcy No. 97–04021.
CIV.A.No. 3:00–CV–73WS.
Adversary No. 99–0185.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 26, 2001.

---

George F. Hollowell, Jr., George F. Hollowell, Jr., Greenville, MS, for David Wade, Jeanette Wade.

William H. Leech, Beth L. Orlansky, McGlinchey Stafford, Jackson, MS, for Chase Manhattan Mortgage Corporation.

Eileen N. Shaffer, Jackson, MS, Pro se.

Ronald McAlpin, Office of the U.S. Trustee, Jackson, MS, Pro se.

### *ORDER CORRECTING ERROR*

WINGATE, District Judge.

Before the court the request to correct this court's Order regarding the appeal from Bankruptcy Court brought by Chase Manhattan Mortgage Corporation and Chase Manhattan Bank, USA, NA, the appellants in the above-styled and numbered cause, wherein this court referred to United States Bankruptcy Judge Edward Ellington as the Bankruptcy Judge who presided over this matter. This case actually was heard and ruled upon by United States Bankruptcy Judge Jerry A. Brown.

This court's correction is hereby entered as a supplemental Order.

## AMENDED ORDER

Before the court is an appeal from Bankruptcy Court brought by Chase Manhattan Mortgage Corporation and Chase Manhattan Bank, USA, NA, the appellants in the above-styled and numbered cause (hereinafter referred to as the "appellants" or by their respective corporate names). The dispute here is whether the appellees' state cause of action against appellants is the property of the bankruptcy estate, or the property of appellees. If the former, appellees have no standing to pursue the claim. Aggrieved over the Bankruptcy Judge's holding to the contrary, appellants here argue that under the dictates of Title 11 U.S.C. § 541(a)(7), appellees' cause of action belongs only to the estate.

This court's jurisdiction over this dispute is predicated on the authority to hear such appeals as provided by Title 28 U.S.C. § 158.[1] Appellate procedure is governed by Title 11 U.S.C. Rule 8001(a)[2] and related statutes. Having reviewed the briefs of counsel, the exhibits and cited authority, and the Memorandum Opinion and Order of the Bankruptcy Court, this court finds that the interlocutory Order of the Bankruptcy Court should be affirmed.

## I. STANDARD OF REVIEW

■■■■ Bankruptcy court legal rulings and decisions are reviewed by the district court hearing on appeal *de novo*, while findings of fact are reviewed for clear error. *Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1021 (5th Cir.1999), citing *Shurley v. Texas Commerce Bank (In re Shurley)*, 115 F.3d 333, 336 (5th Cir.1997). Mixed questions of fact and law are reviewed *de novo*. *Id.* (citing *Southmark Corp. v. Marley (In re Southmark Corp.)*, 62 F.3d 104, 106 (5th Cir.1995), *cert. denied*, 516 U.S. 1093, 116 S.Ct. 815, 133 L.Ed.2d 760 (1996)); *Blakeman v. United States*, 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 654 (1994). The parties herein do not wage a factual dispute; instead, their battle is a juridical one. Accordingly, this court reviews the legal issues herein *de novo*.

## II. BACKGROUND

The appellees David and Jeannette Wade (hereinafter "appellees") filed a petition for relief under Chapter 7 of the Bankruptcy Code on July 31, 1997. Their discharge was entered by the Bankruptcy Court on December 18, 1997. At that time the mortgage to the appellees' home in

---

**1.** Title 28 U.S.C. § 158(a) provides that, "[t]he district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees; (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and (3) with leave of the court, from other interlocutory orders and decrees; and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

**2.** Title 11 U.S.C. Rule 8001(a) provides in pertinent part that, "[a]n appeal from a final judgment, order or decree of a bankruptcy judge to a district court or bankruptcy appellate panel shall be taken by filing notice of appeal with the clerk within the time allowed by Rule 8002. Failure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the district court or the bankruptcy appellate panel deems appropriate, which may include dismissal of the appeal."

Mississippi was held by Chase Manhattan Mortgage Corporation, and the mortgage to certain property in the State of Indiana was held by Chase Manhattan bank, USA, NA. Appellees listed the mortgage on the Mississippi property for reaffirmation,[3] but the Bankruptcy Court granted discharge in December of 1997, before the reaffirmation was administered.

Title 11 U.S.C. § 554(c) provides that, "(c) [u]nless the court orders otherwise, any property scheduled (for reaffirmation) under section 521(1) of this title not otherwise administered at the time of the closing of a case *is abandoned to the debtor* and administered for purposes of section 350 of this title." Title 11 U.S.C. § 521(2)(C)[4] applies to protect the debtor's residual rights under § 554(c) in the event the property is not administered by the trustee. This is because of the presumption that the creditor's rights in the lien will be whatever they will be under state law, once the bankruptcy process is finished. *See In re Lair*, 235 B.R. 1, 71 (Bkrtcy.M.D.La.1999).

On June 29, 1998, over six months after their discharge in Bankruptcy Court, the appellees filed a *pro se* complaint in the Circuit Court of Rankin County, Mississippi, alleging that Chase Manhattan Mortgage Corporation had attempted to "collect the note on the Mississippi property" after the appellees had filed for bankruptcy relief. This complaint, says the Bankruptcy Court, also charges that Chase Manhattan Mortgage Corporation and Chase Manhattan Bank USA, NA conspired to use part of the funds held for the Mississippi mortgage to pay for insurance on the Indiana property. The appellees' state court complaint, seeking damages, asserted claims for breach of contract, breach of fiduciary duty, and other state law claims.

After the appellees filed their *pro se* complaint in Rankin County, Mississippi, the appellants removed the case to federal court and moved for transfer to the Bankruptcy Court. The Honorable William H. Barbour, Jr., United States District Court Judge, granted the motion and the case went to the Bankruptcy Court. There the Bankruptcy Court, United States Bankruptcy Judge Jerry A. Brown presiding, heard and ruled on the dispositive motions, finding that the cause of action raised by the alleged conduct of the Chase appellants belonged to the appellees individually, and not to the bankruptcy estate. Thus, the only question to be reviewed by this court at this juncture is whether the Bankruptcy Judge erred when he denied the appellants' dispositive motions, finding that the appellees had standing to bring their state court lawsuit because a cause of action which arises post-petition is the property of the debtor, not the estate.

---

**3.** Title 11 U.S.C. § 521(2)(A) provides in pertinent part that, "(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; ..."

**4.** Title 11 U.S.C. § 521(2)(C) provides in pertinent part that, "(2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate—(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title; ..."

## III. THE BANKRUPTCY COURT HOLDING

The Bankruptcy Judge found that the appellees' bankruptcy estate had been created when they had filed their Chapter 7 bankruptcy petition in July of 1997, citing Title 11 U.S.C. § 541(a). Section 541(a) of the Bankruptcy Code provides that the bankruptcy estate includes "all legal or equitable interests of the debtor in property *as of the commencement of the case.*"[5] The Bankruptcy Judge noted, however, that § 541(a)(1) was not dispositive of the case *sub judice* because the alleged injury asserted by the appellees in their state court complaint did not occur until a few months after the appellees' bankruptcy petition had been filed. Citing *In re Brannan*, 40 B.R. 20 (Bankr.N.D.Ga.1984), the Bankruptcy Judge also rejected appellants' assertion that § 541(a)(7) applies. Section 541(a)(7) provides that the bankruptcy estate is comprised of "any interest in property that the estate acquires after the commencement of the case." *See Allen v. Levey*, 226 B.R. 857, 865 (Bankr.N.D.Ill. 1998); *In re Herberman*, 122 B.R. 273, 278 (Bkrtcy.W.D.Tex.1990). Since the appellees did not have a tort cause of action as alleged in their complaint at the time their bankruptcy proceeding commenced, reasoned the Bankruptcy Judge, this cause of action was not the property of the bankruptcy estate as defined by § 541(a)(7).

In *In re Brannan*, the Bankruptcy Court held that certain real property previously owned by the debtor and reconveyed to him following his bankruptcy petition filing had not come within the meaning of § 541(a)(7) and had not become a part of the bankruptcy estate because it had not been owned by the debtor at the commencement of his bankruptcy case. Thus, the *Brannan* court concluded that the automatic stay afforded no protection to the property conveyed, and that the mortgage holder's foreclosure sale, which took place shortly after this post-petition conveyance to the debtor, was fully authorized, particularly with regard to property in which the debtor lacked any pre-petition interest. *Id.*, 40 B.R. 20, 25.

The Bankruptcy Judge also discussed *Lawrence v. Jackson Mack Sales, Inc.*, 837 F.Supp. 771 (S.D.Miss.1992), where the plaintiff had filed a medical insurance claim under COBRA.[6] The employer's failure to pay benefits under COBRA caused the plaintiff to file a bankruptcy petition and a lawsuit against the former employer. When the plaintiff recovered a judgment in his COBRA lawsuit, he attempted to exclude the judgment from his bankruptcy estate because the proceeds of the judgment were not part of his assets at the time he filed his petition. The *Lawrence* court held, however, that the plaintiff's cause of action under COBRA arose

---

**5.** Title 11 U.S.C. § 301 provides that, "[a] voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." "Case" refers to the underlying bankruptcy case commenced by the filing of a petition. *See In re Craftsmen, Inc.*, 183 B.R. 116, 118 (Bkrtcy.N.D.Tex.1995).

**6.** The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), which applies to all employers with twenty or more employ-

ees, and requires that, when a group health care plan providing coverage for a beneficiary who would lose coverage under the plan as a result of one of the specified "qualifying events" (such as loss of one's job), an opportunity must be afforded for the individual to continue to be covered by the employer's plan for a period of time which—depending on the reason why the individual was no longer included as a participant—may be as long as thirty-six months. *See* Title 29 U.S.C. §§ 1161–67.

before commencement of his bankruptcy case and became a part of his bankruptcy estate when the petition was filed, notwithstanding that the plaintiff's recovery took place after the petition. *Id.* at 779.

Finally, the Bankruptcy Judge addressed the cases of *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir.1994), and *In re Cox*, 214 B.R. 635 (Bkrtcy. N.D.Ala.1997), and rejected them because, respectively, they dealt with Chapter 11 and Chapter 13 estates rather than a Chapter 7 estate as is present in the instant case. Closer scrutiny of these two cases reveals that *Lemelle* involved a wrongful death claim against a successor corporation to a corporation in Chapter 11 bankruptcy, a claim which did not accrue under state law until two years after the bankrupt corporation's Chapter 11 reorganization plan was approved by the Bankruptcy Court. The Fifth Circuit held that the wrongful death claim was not a part of the corporation's reorganization when the case commenced, or as it proceeded through the process, and could not have been discharged so as to preclude the plaintiff's wrongful death claim against the successor corporation.

In *Cox*, Chapter 13 debtors sued a creditor for repossessing the debtors' automobile in violation of an automatic stay after the debtor's reorganization plan had been approved by the Bankruptcy Court, but before the debtors' case was dismissed and before the stay was lifted. The debtors had defaulted on their adequate protection payment of $170.00, and the creditor proceeded to repossess the vehicle, believing that the bankruptcy case had been closed. The creditor argued, among other things, that the automobile was the property of the debtor, not the estate, once the debtor's Chapter 13 plan had been approved, and could be repossessed. The creditor relied on Title 11 U.S.C. § 1327(b), which provides that following the confirmation of a plan, the property of the estate vests in the debtor "[e]xcept as otherwise provided in the plan or the order confirming the plan." However, the *In re Cox* court avoided the § 1327(b) debate,[7] finding that, notwithstanding the status of the property of the estate, the automatic stay clearly had been violated and that this took precedence over the "affect of confirmation debate."

---

7. There are three lines of cases concerning the affect of a Chapter 13 debtor's order of confirmation on the bankruptcy estate. One line holds that unless otherwise provided in the plan or order of confirmation, the vesting of property pursuant to 11 U.S.C. § 1327(b) removes all property from the estate, transfers that property to the debtor, and causes the estate to come to an end. *In re Nash*, 765 F.2d 1410, 1414 (9th Cir.1985). Another line of cases hold that vesting under 11 U.S.C. § 1327(b) does not remove any property from the estate, and confirmation effects no change in the estate. *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687 (8th Cir.1993). The third line of cases is a middle ground between complete termination of the estate and complete preservation of the estate post-confirmation. These cases hold that the vesting provided for by Section 1327(b) does not terminate the estate, but does transfer to the

debtor most, if not all, of the property in the estate at the time of confirmation. *In re Thompson*, 142 B.R. 961, 964 (Bankr.D.Colo. 1992); *In re Root*, 61 B.R. 984, 985 (Bankr. D.Colo.1986). The cases in this third category agree on the general principal that the estate survives confirmation, but splits over what kind of property is specifically included in the estate after confirmation. *In re Fisher*, 203 B.R. 958, 961 (N.D.Ill.1997) (property interests which comprise of the Chapter 13 debtor's pre-confirmation estate leave the estate and vest in the debtor upon confirmation, whereas property acquired post-confirmation is deemed estate property); and *In re Heath*, 115 F.3d 521, 524 (7th Cir.1997) (a Chapter 13 debtor's plan upon confirmation returns "so much of that property to the debtor's control as is not necessary to the fulfillment of the plan").

Therefore, following the rationale of *Brannan,* and unimpressed by appellants' reliance on other jurisprudence, the Bankruptcy Judge in the instant case concluded that the appellees' causes of action in question could not be part of the bankruptcy estate because these causes of action had not existed at the time the appellees' Chapter 7 petition was filed in July of 1997. The Bankruptcy Judge concluded that the debtors owned the causes of action and had standing to bring them in state court. The Bankruptcy Judge also concluded that neither § 541(a)(1) nor § 541(a)(7) could be applied to capture the appellees' tort claim in the instant case and make it a part of the bankruptcy estate. For the reasons that follow, this court agrees.

### IV. *SECTIONS 541(a)(1) AND 541(a)(7)*

■ Section 541(a)(1) provides that the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." All legal or equitable interests of the debtor includes viable civil lawsuits for damages. *Matter of Educators Group Health Trust,* 25 F.3d 1281, 1283–84 (5th Cir.1994) (section 541(a)(1)'s reference to "all legal or equitable interests of the debtor in property' includes causes of action belonging to the debtor at the time the case is commenced."); *Louisiana World Exposition v. Federal Insurance Company,* 858 F.2d 233, 245 (5th Cir.1988); and *In re MortgageAmerica Corp.,* 714 F.2d 1266,

1274 (1983) (noting that the meaning of the term "all legal or equitable interests" includes, at the very least, all rights of action). And, the stated time period means what it says, "as of the commencement of the case." So, legal or equitable [8] interests possessed by the debtor at the time the case is commenced belong to the bankruptcy estate. Once an asset is deemed to belong to the bankruptcy estate, the asset no longer may be controlled by the debtor. *See Matter of Educators Group Health Trust,* 25 F.3d 1281, 1284 (5th Cir.1994) (if a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim), citing *Matter of S.I. Acquisition, Inc.,* 817 F.2d 1142, 1153–54 (5th Cir.1987).

■ As previously noted, § 541(a)(7) is a catchall provision which further captures, "[a]ny interest in property that the estate acquires after commencement of the case" for the estate. *Allen v. Levey,* 226 B.R. 857, 865 (Bankr.N.D.Ill.1998); *In re Herberman,* 122 B.R. 273, 278 (Bkrtcy. W.D.Tex.1990). Upon a voluntary filing of a petition, a bankruptcy "estate," is called into existence by the debtor. *Id.* An estate is a separate legal identity, created on and by the filing of a bankruptcy petition, and continuing until confirmation, conversion, or dismissal of the case. *Id.* The estate is more than just its property at the time the case commences. It is an active legal enterprise, comprised of its property, to be sure, but also of what that property

---

**8.** The Fifth Circuit has explained that whether a debtor's interest in property becomes property of the bankruptcy estate is a function of whether the debtor had an interest, whether legal or equitable, in property cognizable under applicable state law. *Matter of Missionary Baptist Foundation,* 792 F.2d 502, 505 (5th Cir.1986). The Bankruptcy Code envisions resort to state law to give substance to the somewhat tautological definition of "property of the estate" in Section 541. *See*

*Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law"); and *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) ( "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law").

generates while operating under the aegis of the Bankruptcy Code. For instance, the earnings of an enterprise during bankruptcy, regardless of source, of necessity is "an interest in property" acquired by the estate after the commencement of the case. *Id.* When an aircraft manufacturer builds a plane, then leases it out and generates lease income, or sells it outright, everything generated belongs to the estate—the cash sale price, the profit, the excess income from leasing—everything. When a supermarket sells groceries, or an insurance agent sells insurance, or a hospital sells hospital care, the proceeds generated from the estate's property are a part of the estate. *See In re Herberman*, 122 B.R. at 278–79.

## V. ANALYSIS

█ This court has reviewed the arguments of the appellants, finding that, for the most part, they refine and reargue their position based on the cases already rejected by the Bankruptcy Judge, and on § 541(a)(7), which this court finds unpersuasive. In reaching its decision to affirm the finding of the Bankruptcy Judge, this court additionally relies on the case of *In re Doemling*, 127 B.R. 954 (W.D.Pa.1991), where the court noted that § 541(a)(1) specifically limits the property of the estate *to the debtor's property interest as they exist when the case is commenced*, whereas § 541(a)(7) focuses on property interests *acquired by the estate after the commencement of the case*. After the commencement of the case, the bankruptcy estate has an existence that is completely separate from that of the debtor, and § 541(a)(7) covers only property that the estate itself acquires after the commencement of the bankruptcy proceeding. *In re Doemling*, 127 B.R. at 956.

█ The parties in the instant case do not dispute that a cause of action belonging to a debtor as of the petition's filing becomes property of the estate, and that the causes of action in the instant case did not belong to the appellees until after the petition was filed. In *Louisiana World Exposition v. Federal Insurance Company*, 858 F.2d 233, 245 (5th Cir.1988), the Fifth Circuit noted that § 541(a)(1)'s reference to "all legal or equitable interests of the debtor in property" includes causes of action belonging to the debtor at the time the case is commenced.

The parties herein all agree to the following facts: the appellees' petition was filed in July of 1997; that the appellants began their alleged collection activities after the petition was filed; that discharge occurred in December of 1997 before reaffirmation was administered; and that the appellees' state court action was filed in 1998.

Appellants have yet to show how appellees' claims are traceable directly to prepetition conduct. *See, e.g., Bobroff v. Continental Bank*, 43 B.R. 746, 750–51 (E.D.Pa.1984) (debtor's tort claims were not property of estate where events giving rise to claims occurred following filing of debtor's Chapter 7 petition), *aff'd*, 766 F.2d 797 (3d Cir.1985); *Brunswick Bank & Trust Company v. Atanasov (In re Atanasov)*, 221 B.R. 113, 116–17 (D.N.J.1998) (debtor's malicious prosecution claim was not property of estate as it arose postpetition when indictment was dismissed); *In re Doemling*, 127 B.R. at 955–57 (debtors' tort claim arising from automobile accident five months after filing of bankruptcy petition was not property of estate); and *Matthews v. United States (In re Matthews)*, 184 B.R. 594, 601 (Bkrtcy.S.D.Ala. 1995) (Chapter 7 debtors' compensatory damages award against IRS was awarded to debtors personally, and not as estate property, where award was premised on

IRS actions that took place post-discharge).

Nor have appellants shown that appellees' cause of action was brought pre-petition, but had "borne fruit in settlement or judgment after commencement of the bankruptcy case." *See Wischan v. Adler*, 77 F.3d 875, 877 (5th Cir.1996). Clearly, the appellees' claims in the instant case had not accrued as of the commencement of the appellees' bankruptcy proceeding and cannot be construed to be property of the appellees' bankruptcy estate pursuant to Title 11 U.S.C. § 541(a)(1).

Appellants' reliance on § 541(a)(7) is similarly misplaced. Section 541(a)(7) only addresses property that the estate itself acquires after the commencement of the bankruptcy proceeding. Appellants have failed to show that the estate, an entity separate and apart from the debtors, ever acquired the causes of action at issue. *See In re Doemling*, 127 B.R. at 956.

## VI. *CONCLUSION*

This court has reviewed the Bankruptcy Judge's Order and is not persuaded by any of appellants' arguments. Therefore, this court hereby affirms the Bankruptcy Judge's Order finding that the lawsuit in question belongs to the appellees, and not the estate, and that the appellees have standing to pursue the lawsuit.